UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

MOSAIC UNDERWRITING SERVICE, INC. ET AL.        CIVIL ACTION

VERSUS                                          NO. 12-2183

MONCLA MARINE OPERATIONS, L.L.C. ET AL.         SECTION "F"

ORDER AND REASONS

Before the Court is the third-party defendants' motion to stay proceedings and compel arbitration. For the reasons that follow, the motion is GRANTED.

Background

This dispute arises out of the salvage of a damaged vessel.

The MONCLA 101, owned and operated by Moncla Marine Operators, LLC, is a "work-over barge" or "post-drilling rig," used to drive pilings and posts in maritime environments. On or about May 5, 2012, the MONCLA 101 was onsite at Calliou Island in Terrebonne Bay, Louisiana, performing a job for one of Moncla's customers, Hilcorp. In accordance with its design, the MONCLA 101 was deliberately flooded; an operation which involves filling the hull portion of the rig with water to ballast it down so that it sits on the seabed. On June 13, 2012, during efforts to deballast, Moncla Marine was unable to raise and refloat the vessel because of multiple holes in the hull.

1

With the MONCLA 101 still sitting on the seabed, Moncla Marine hired divers to apply patches to the hull, but these efforts proved futile.  Moncla Marine then retained a salvage company, Inland Salvage, Inc., to raise the vessel.  Moncla Marine entered into a $3.55 million "no cure-no pay" contract with Inland Salvage to remove the MONCLA 101 from the seabed. Island Salvage successfully floated the vessel, and, on July 14, 2012, the MONCLA 101 was towed to the Bollinger Shipyard in LaRose, Louisiana, where it remains today.

At all relevant times, Moncla Marine had numerous insurance policies covering the MONCLA 101, which can best be grouped in three categories: (1) Hull & Machinery Policy,[1] (2) Primary Protection & Indemnity Policy,[2] and (3) Excess Protection & Indemnity Policy;[3] respectively, the Hull Underwriters, Primary P&I Underwriters, and Excess P&I Underwriters.  The Hull &

---

[1] This includes Lloyds Syndicates numbers 2987, 2007, 4711, 382, 3000, 4020, 2001, and 2488, all of whom subscribed to and/or secured Hull and Machinery Policy Number B0702HA037000b, which was issued to Moncla Marine.

[2] This includes Lloyds Syndicates numbers 2003, 609, 2987, 1225, 2488, 4711, 2121, 1183, 1221, 457, and 300, all of whom subscribed to and/or secured the Primary Protection and Indemnity Policy Number B0702PA018140b issued to Moncla Marine.

[3] This includes Mosaic Underwriting Service, on behalf of Lloyds Syndicate number 1861, and Navigators Insurance Company, Inc., which issued Excess Protection and Indemnity Policy Number MUS334191-12-1 to Moncla Marine.  Navigators Insurance is a 50% subscriber to the Excess P&I Policy, utilizing policy number HO12LIA245101.

Machinery policy and the Primary P&I policy were obtained through the Osprey Underwriting Agency, Ltd.  All three policies were underwritten by multiple syndicates on a subscription basis at Lloyds of London.

The costs for the removal of the MONCLA 101, which total approximately $3.55 million, were covered by the Primary P&I and Excess P&I Underwriters.  On behalf of Moncla Marine, the Primary P&I Underwriters paid $1 million to Inland Salvage and the Excess P&I Underwriters paid $2.55 million.

On August 31, 2012, the Excess P&I Underwriters sued for a declaratory judgment in this Court, naming as defendants MONCLA 101, in rem, and Moncla Marine, in personam.  Excess P&I Underwriters seek a declaration that they are entitled to take title to the vessel, sell the vessel, and have priority over any other claim once the proceeds are distributed among claimants. On November 13, 2012, Moncla Marine denied Excess P&I Underwriters's claims and affirmatively asserted a counterclaim against Excess P&I, alleging claims of negligence under Louisiana Civil Code articles 2315, 2316, 2320; conspiracy and collusion under article 2324; fraud; violations of the Louisiana Unfair Trade and Practices Act; breach of fiduciary duty; and detrimental reliance.  In addition to other damages and fees, Moncla Marine seeks a claim for punitive damages.  On the same day, November 13, 2012, Moncla Marine also filed a third-party

complaint in this Court, naming as third-party defendants Osprey Underwriting, the Hull Underwriters, and the Primary P&I Underwriters.  Moncla Marine asserts essentially the same claims in its third-party complaint as it does in its counterclaim against the Excess P&I Underwriters; in sum, Moncla Marine asserts ten causes of action against the Hull Underwriters, eight against the Primary P&I Underwriters, and seven against Osprey.

The third-party defendants, Osprey, Hull Underwriters, and the Primary P&I Underwriters, now move the Court to stay proceedings and compel arbitration.

I.

This motion puts into play several competing sources of treaty law, the primary concept of arbitration dispute resolution, and insurance policy provisions.  Third-party defendants, invoking the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, contend that arbitration should be compelled pursuant to the insurance policies' arbitration clauses.  The Court agrees.

*A.*

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards is anchored to the Constitution's treaty power. The United States is a party to the Convention, which Congress implemented at 9 U.S.C. § 201, "mak[ing] the Convention the highest law of the land."  Sedco, Inc. v. Petroleos Mexicanos

4

Nat'l Oil Co., 767 F.2d 1140, 1145 (5th Cir. 1985). The Fifth Circuit has observed that the purpose of ratifying the Convention was "to secure for United States citizens predictable enforcement by foreign governments of certain arbitral contracts and awards made in this and other signatory nations." McDermott Int'l, Inc. v. Lloyds Underwriters of London, 944 F.2d 1199, 1207 (5th Cir. 1991).[4]

Section 202 of the Convention, which addresses the Convention's coverage, provides:

> An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention. An agreement or award arising out of such a relationship which is entirely

---

[4] Title 9 of the United States Code contains both the Federal Arbitration Act and the United States implementing legislation for the Convention. When the Convention governs the recognition and enforcement of an arbitration agreement or award, the FAA applies only "to the extent that [the FAA] is not in conflict with [the Convention Act] or the Convention as ratified by the United States." See 9 U.S.C. § 8; Francisco v. STOLT ACHIEVEMENT MT, 293 F.3d 270, 274 (5th Cir. 2002). The Fifth Circuit, acknowledging that the Convention incorporates the FAA (codified at Chapter 1 of Title 9), points out that the Convention is broader:
> Both the Arbitration Act and the Convention provide that if a dispute in a pending lawsuit is subject to arbitration, the district court "shall on application of one of the parties stay the trial of the action until such arbitration has been had." Both provide that the district court "shall make an order directing the parties to proceed to arbitration" when the site for arbitration is within the district. But § 206 of the enabling legislation for the Convention also authorizes district courts to order parties to proceed with a Convention arbitration even outside the United States.

Sedco, 767 F.2d at 1146 (footnotes omitted).

>     between citizens of the United States shall be deemed not
>     to fall under the Convention unless the relationship
>     involves property located abroad, envisages performance
>     or enforcement abroad, or has some other reasonable
>     relation with one or more foreign states.  For the
>     purpose of this section a corporation is a citizen of the
>     United States if it is incorporated or has its principal
>     place of business in the United States.

9 U.S.C. § 202.  "In determining whether the Convention requires compelling arbitration in a given case," the Fifth Circuit instructs, "courts conduct only a very limited inquiry." Freudenspring v. Offshore Tech. Servs., Inc., 379 F.3d 327, 339 (5th Cir. 2004) (citing Sedco, 767 F.2d at 1144-45)).  An arbitration agreement "falls under" the Convention pursuant to Section 202, and the Court should compel arbitration, if the following four prerequisites are met: (1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen.  Id. (citing Sedco, 767 F.2d at 1146).  The Fifth Circuit has expressly stated that "[o]nce these requirements are met, the Convention requires the district court[] to order arbitration . . . unless it finds that the said agreement is null and void, inoperative or incapable of being performed."  Id. (citation omitted and internal quotation marks omitted).

*B.*

The contracts between Moncla Marine and the Hull and Primary P&I Underwriters contain the following Osprey Law and Practice Clause, which states:

> Notwithstanding anything to the contrary, this insurance is subject to English law and ***any dispute arising under or in connection with this insurance is to be referred to Arbitration in London***, one Arbitrator to be nominated by the Assured and the other by Osprey on behalf of Underwriters.  The Arbitration shall be conducted pursuant to exclusive supervision of the English High Court of Justice.  In case the Arbitrators shall not agree, then the dispute shall be submitted to an Umpire shall be binding upon both parties.  ***In the event of a conflict between this clause and any other provision of this insurance, this clause shall prevail and the right of either party to commence proceedings before any other Court or Tribunal in any other jurisdiction shall be limited to the process of enforcement of any award hereunder.***

Rec. Doc. 10-3 at 33, 61.  There is no serious dispute that the four elements required for an agreement to "fall under" the Convention are met in this case.  First, both the Hull and Primary P&I policies are in writing and contain an agreement to arbitrate "any dispute arising under or in connection with this insurance."  Second, the agreement provides for arbitration in London, England, which is a Convention signatory nation.  Third, the agreement arises out of a commercial relationship, because contracts of marine insurance have been held to constitute a "commercial relationship" within the context of an arbitration dispute.  See, e.g., Viator v. Dauterive Contractors, Inc., 638

7

F. Supp. 2d 641, 647 (E.D. La. 2009); Roser v. Belle of New Orleans, L.L.C., No. 03-1428, 2003 WL 2217482, at *4 (E.D. La. Sept. 12, 2003).  Finally, the fourth element is met because the record establishes that none of the third-party defendants are United States citizens.  Osprey is domiciled in London, England, and both the Hull Underwriters and Primary P&I Underwriters are also domiciled for business purposes in London, England.  Having found that the arbitration agreement "falls under" the Convention, the Court must now determine whether Moncla Marine's claims are within the scope of the arbitration clause.

C.

The Fifth Circuit has noted that "when confronted with arbitration agreements, we presume that arbitration should not be denied unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue."  Sedco, 767 F.2d at 1145.  In determining whether a particular claim falls within the scope of an arbitration agreement, the focus is properly placed on the factual allegations of the complaint rather than the legal causes of actions asserted.  "Were the rule otherwise," as one court has soundly observed, "a party could frustrate any agreement to arbitrate simply by the manner in which it framed its claim."  In re Oil Spill by Amozo Cadiz, 659 F.2d 789, 794 (7th Cir. 1981).

The Court finds that Moncla Marine's claims are within the broad scope of the arbitration clause.[5]  The crux of Moncla Marine's claims against the third-party defendants are that they conspired and colluded to compensate Moncla Marine under the Primary P&I policy, rather than the Hull policy.  By doing so, it is argued, the third-party defendants would receive a credit for the salvage value of the MONCLA 101, which would be available under the terms of the Primary P&I policy but not the Hull policy.

The underlying basis of all Moncla Marine's claims is that the insurance policies issued to Moncla cover all or some of the MONCLA 101 loss.  For Moncla Marine's claims to be within the scope of the arbitration clause, the claims must relate to "**any dispute** arising under or **in connection** with this insurance."  The Fifth Circuit has stated, and this Court agrees, that "it is difficult to imagine a broader general language than 'any dispute.'"  Sedco, 767 F.2d at 1145 (internal quotation marks omitted).  The inclusion of the language "in connection" also reaffirms the breadth of the arbitration clause in this case, and the Fifth Circuit has expressly stated that broad arbitration agreements embrace "all disputes between the parties having a significant relationship to the contract regardless of the label

---

[5] Moncla Marine apparently concedes this point: it fails to address this issue in its opposition memorandum.  Instead, it focuses on other issues in the event that the Court finds a valid arbitration clause.

attached to the dispute." <u>Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.</u>, 139 F.3d 1061, 1067 (5th Cir. 1998).

Accordingly, the Court finds that a valid arbitration agreement exists under the Convention, and Moncla Marine's claims are within the scope of the agreement.

*D.*

Moncla Marine contends that arbitration is inappropriate for several reasons, all of which the Court finds unpersuasive.

First, Moncla Marine asserts that the policy language does not require arbitration.  Specifically, Moncla Marine points to the "Risk Details," which states that jurisdiction is governed by the "Osprey Service of Suit Clause" and the applicable choice of law is determined by the "Osprey Law and Practice Clause."  And, "[a]ny other provision contained herein which provides for any law and/or jurisdiction other than that stated in this Choice of Law and Jurisdiction is deemed deleted."  Therefore, Moncla Marine contends that the Osprey Law and Practice Clause is "deemed deleted" and the policy contains no language requiring arbitration.  This argument is patently contrary to the plain language of the Risk Details provision.  As mentioned, the Risk Details provide that "***[a]ny other provision*** which provides for any law and/or jurisdiction ***other than that stated in this Choice of Law and Jurisdiction*** is deemed deleted."  This language

10

clearly preserves and excludes the Osprey Service of Suit Clause and the Osprey Law and Practice Clause from deletion.

Second, Moncla Marine's argument that the Service of Suit Clause "trumps" the Osprey Law and Practice Clause is also unavailing. Moncla Marine contends that jurisdiction is to be selected pursuant to the Service of Suit Clause, not the Osprey Law and Practice Clause, which, Moncla Marine asserts, determines choice of law issues only. The Service of Suit Clause states:

> It is agreed that in the event of the failure of the Underwriters severally subscribing to this insurance (the Underwriters) to pay any amount claimed to be due hereunder, the Underwriters, at the request of the Assured, will submit to the jurisdiction of a court of competent jurisdiction within the United States of America.
> Notwithstanding any provision elsewhere in this insurance relating to jurisdiction, it is agreed that the Underwriters have the right to commence an action in any court of competent jurisdiction in the United States of America, and nothing in this clause constitutes or should be understood to constitute a waiver of the Underwriters' rights to remove an action to a United States Federal District Court or to seek remand therefrom or to seek a transfer of any suit to any other court of competent jurisdiction as permitted by the laws of the United States of America or any sate therein.

Rec. Doc. 10-3 at 31. Notably, however, and inexplicably, Moncla Marine fails to acknowledge the instruction of the Service of Suit Clause that states the clause is "[s]ubject, in all respects, to the Osprey Law and Practice Clause." Moncla

11

Marine's argument is also counter to the prevailing case literature.[6]

The Fifth Circuit addressed the interplay between a similar marine insurance contract's arbitration provision and Service of Suit clause in <u>McDermott International, Inc. v. Lloyds Underwriters of London</u>.  944 F.2d 1199 (5th Cir. 1991).  In <u>McDermott</u>, the plaintiff asserted (as does Moncla Marine here) that the insurer's failure to pay plaintiff's claim "invoked the policy's service-of-suit clause" and, therefore, plaintiff is allowed to select the forum of its choosing.  <u>Id.</u> at 1204-05.  The Fifth Circuit rejected this line of reasoning, stating that it "ignore[s] the policy's arbitration clause."  <u>Id.</u> at 1205.  The Fifth Circuit went on the explain that the arbitration provision was not waived by the Service of Suit clause.  <u>See</u> <u>id.</u>  Rather, the Service of Suit clause is designed to ensure that an insured may obtain personal jurisdiction over its foreign insurer

---

[6] For a sampling of cases outside this Circuit, see <u>Century Indem. Co. v. Certain Underwriters at Lloyd's, London</u>, 584 F.3d 513, 554 (3d Cir. 2009) ("But service-of-suit clauses do not negate accompanying arbitration clauses; indeed, they may complement arbitration clauses by establishing a judicial forum in which a party may enforce arbitration."); <u>Montauk Oil Transp. Corp. v. Steamship Mut. Underwriting Ass'n (Bermuda)</u>, 79 F.3d 295, 298 (2d Cir. 1996) (noting that the principal effect a service of suit clause is to resolve the issue of personal jurisdiction over a foreign association because an arbitration award cannot be enforced without access to the courts); <u>Sec. Life Ins. Co. v. Hannover Life Reassurance Co.</u>, 167 F. Supp. 2d 1086, 1088 (D. Minn. 2001) ("It is well-established that such service of suit clauses do not abridge an agreement to arbitrate all disputes arising out of a relationship.").

to enforce arbitration awards or to litigate disputes that are not actually arbitrated. See id.; see also Ochsner/Sisters of Charity Health Plan, Inc. v. Certain Underwriters at Lloyd's London, No. 96-1627, 1996 WL 495157, at *3 (E.D. La. Aug. 30, 1996) ("To give meaning to the arbitration clause in the face of Congress' policy favoring arbitration, the Fifth Circuit [in McDermott] determined that the arbitration clause ensured that all disputes arising from the policy would be determined by arbitration and that the service of suit clause applied to suits to enforce an arbitration award.  The Fifth Circuit interpreted the clauses in this manner to avoid rendering the arbitration clause meaningless. . . . [The service of suit] clause does not provide an independent means by which to resolve disputes covered by the arbitration clause." (citation omitted)).

   Third, Moncla Marine contends that it has tendered, pursuant to Federal Rule of Civil Procedure 14(c), the third-party defendants to the Excess P&I Underwriters.  "This is a concept unique to admiralty practice which makes a third-party defendant directly liable to the plaintiff[] and is distinguishable from the third party practice under Fed. R. Civ. P. 14(a), which does not automatically establish a direct link between the plaintiff and the third-party defendant."  See Karim v. Finch Shipping Co., No. 96-1175, 1997 WL 436257, at *2 (E.D. La. July 31, 1997) (citing Seal Offshore, Inc. v. Am. Standard, Inc., 777 F.2d 1042,

1045 (5th Cir. 1985)).  Because the third-party defendants may now be liable to the Excess P&I Underwriters, Moncla Marine submits that arbitration is inappropriate.

The Fifth Circuit has specifically held, albeit in a FAA context,[7] that "the policy of liberal joinder in maritime cases embodied in Rule 14(c) does not supercede the statutory right to enforce contractual arbitration."  <u>Texaco Exploration & Prod. Co. v. AmClyde Engineered Prods. Co.</u>, 243 F.3d 906, 908 (5th Cir. 2001).  The Fifth Circuit reasoned that "to carve out a Rule 14(c) exception . . . could severely undermine maritime arbitration clauses, inspiring abuse and opportunistic behavior, as third parties are allowed or encouraged to do what the parties to a contract themselves are not: to put aside a mandatory arbitration provision and force litigation."  <u>Id.</u>  Accordingly, even assuming that Moncla Marine has sufficiently invoked Rule 14(c),[8] the Court finds that this does not defeat arbitration here.

---

[7] Again, the Court points out that the Convention incorporates the FAA and is considered broader in scope.  <u>See</u> <u>Sedco</u>, 767 F.2d at 1146; <u>supra</u> note 4.

[8] The Court notes that Magistrate Judge Roby has not yet ruled on whether Moncla Marine can file its supplemental third-party complaint, which would clarify its position that Moncla intended to tender the third-party defendants to the Excess P&I Underwriters pursuant to Rule 14(c). <u>See</u> Rec. Doc. 15.

Finally, in what can be construed as a last-ditch effort to avoid arbitration, Moncla Marine submits that arbitration in this case would create piecemeal litigation, the third-party defendants's previously waived their rights to arbitrate, and the third-party defendants will have to appear before the Court to litigate their in rem claims.  See Bunge Corp. v. MV FURNESS BRIDGE, 390 F. Supp. 603 (E.D. La. 1974).  On the issue of piecemeal litigation and potentially relitigating issues with nonsignatories to the insurance policies, the Fifth Circuit has expressly stated:

> We have anticipated that arbitration of a portion of a dispute will lead to duplicated efforts and inefficiency if the dispute, once arbitrated, must then be resolved in court with nonsignatory parties. But we have held that any inconvenience or duplication of effort is a consequence of having agreed to arbitrate. Specifically, duplication of effort, redundant testimony, and the possibility of inconsistent findings . . . are the risks that parties to an arbitration clause must be considered to have contemplated at the time they struck their bargain. The relevant federal law requires piecemeal resolution when necessary to give effect to an arbitration agreement. This is so notwithstanding the presence of other persons who are parties to the underlying dispute but not to the arbitration agreement, meaning that parties subject to arbitration will have to re-litigate issues with non-parties.

The Rice Company (Suisse), S.A. v. Precious Flowers, Ltd., 523 F.3d 528, 540 (5th Cir. 2008) (footnotes and internal quotation marks omitted); see also Cargill Ferrous Int'l v. M/V JIA QIANG, No. 07-1330, at *5-6 (E.D. La. Mar. 31, 2009) (finding it proper to stay the third-party complaint pending the arbitration in

London even though piecemeal litigation may occur). Moncla Marine itself admits in its submission papers that "piecemeal litigation is sometimes acceptable." And, the fact that the third-party defendants might have previously waived their rights to arbitration in a completely unrelated case in 2007 has no bearing here; this case presents independent insurance contracts with their own power to bind Moncla Marine to the terms to which it agreed.

    Accordingly, IT IS HEREBY ORDERED the third-party defendants' motion to stay proceedings and compel arbitration is GRANTED.

    New Orleans, Louisiana, February 20, 2013

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE