UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

MOSAIC UNDERWRITING SERVICE, INC. ET AL.         CIVIL ACTION

VERSUS                                            NO. 12-2183

MONCLA MARINE OPERATIONS, L.L.C. ET AL.           SECTION "F"

ORDER AND REASONS

Before the Court is Excess P&I Underwriters' motion to lift the stay for the distribution of sale proceeds. For the reasons that follow, the motion is DENIED.

Background

This dispute arises out of the salvage of a damaged vessel.

The MONCLA 101, owned and operated by Moncla Marine Operators, LLC, is a "work-over barge" or "post-drilling rig," used to drive pilings and posts in maritime environments. On or about May 5, 2012, the MONCLA 101 was onsite at Calliou Island in Terrebonne Bay, Louisiana, performing a job for one of Moncla's customers, Hilcorp. In accordance with its design, the MONCLA 101 was deliberately flooded; an operation which involves filling the hull portion of the rig with water to ballast it down so that it sits on the seabed. On June 13, 2012, during efforts to deballast, Moncla Marine was unable to raise and refloat the vessel because of multiple holes in the hull.

With the MONCLA 101 still sitting on the seabed, Moncla

1

Marine hired divers to apply patches to the hull, but these efforts proved futile.  Moncla Marine then retained a salvage company, Inland Salvage, Inc., to raise the vessel.  Moncla Marine entered into a $3.55 million "no cure-no pay" contract with Inland Salvage to remove the MONCLA 101 from the seabed.  Island Salvage successfully floated the vessel, and, on July 14, 2012, the MONCLA 101 was towed to the Bollinger Shipyard in LaRose, Louisiana, where it remains today.

At all relevant times, Moncla Marine had numerous insurance policies covering the MONCLA 101, which can best be grouped in three categories: (1) Hull & Machinery Policy,[1] (2) Primary Protection & Indemnity Policy,[2] and (3) Excess Protection & Indemnity Policy;[3] the Hull Underwriters, Primary P&I Underwriters, and Excess P&I Underwriters.  The Hull & Machinery policy and the Primary P&I policy were obtained through the

---

[1] This includes Lloyds Syndicates numbers 2987, 2007, 4711, 382, 3000, 4020, 2001, and 2488, all of whom subscribed to and/or secured Hull and Machinery Policy Number B0702HA037000b, which was issued to Moncla Marine.

[2] This includes Lloyds Syndicates numbers 2003, 609, 2987, 1225, 2488, 4711, 2121, 1183, 1221, 457, and 300, all of whom subscribed to and/or secured the Primary Protection and Indemnity Policy Number B0702PA018140b issued to Moncla Marine.

[3] This includes Mosaic Underwriting Service, on behalf of Lloyds Syndicate number 1861, and Navigators Insurance Company, Inc., which issued Excess Protection and Indemnity Policy Number MUS334191-12-1 to Moncla Marine.  Navigators Insurance is a 50% subscriber to the Excess P&I Policy, utilizing policy number HO12LIA245101.

Osprey Underwriting Agency, Ltd.  All three policies were underwritten by multiple syndicates on a subscription basis at Lloyds of London.

The costs for the removal of the MONCLA 101, which total approximately $3.55 million, were covered by the Primary P&I and the Excess P&I Underwriters.  The Primary P&I Underwriters paid $1 million to Inland Salvage and the Excess P&I Underwriters paid $2.55 million.

On August 31, 2012, the Excess P&I Underwriters sued for a declaratory judgment in this Court, naming as defendants the MONCLA 101, in rem, and Moncla Marine, in personam.  Excess P&I Underwriters seek a declaration that they are entitled to take title to the vessel, sell the vessel, and have priority over claims once the proceeds are distributed among claimants.  On November 13, 2012, Moncla Marine denied Excess P&I Underwriters' claims and affirmatively asserted a counterclaim against Excess P&I, alleging claims of negligence under Louisiana Civil Code articles 2315, 2316, 2320; conspiracy and collusion under article 2324; fraud; violations of the Louisiana Unfair Trade and Practices Act; breach of fiduciary duty; and detrimental reliance.  In addition to other damages and fees, Moncla Marine seeks a claim for punitive damages.

On the same day, November 13, 2012, Moncla Marine also filed a third-party complaint in this Court, naming as third-party

defendants Osprey Underwriting, the Hull Underwriters, and the Primary P&I Underwriters.  Moncla Marine asserts essentially the same claims in its third-party complaint as it does in its counterclaim against the Excess P&I Underwriters; in sum, Moncla Marine asserts ten causes of action against the Hull Underwriters, eight against the Primary P&I Underwriters, and seven against Osprey.  The crux of Moncla Marine's claims against the Express P&I, Hull, and Primary P&I Underwriters is that all underwriters conspired and colluded to compensate Moncla Marine under the Primary and Excess P&I policies, rather than the Hull policy.  By doing so, it is argued, the P&I Underwriters would receive a credit for the salvage value of the MONCLA 101, which would be available under the terms of the Primary and Excess P&I policies but not the Hull policy.

On December 6, 2012, the third-party defendants, invoking the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, moved the Court to stay proceedings and compel arbitration in London pursuant to the insurance policies' arbitration clauses.  The Court granted the motion on February 20, 2013, and the proceedings between Moncla Marine and the Hull Underwriters, Primary P&I Underwriters, and Osprey were stayed.  Excess P&I Underwriters' claims against Moncla Marine remained pending before this Court.  On March 12, 2013, Moncla Marine moved to stay proceedings and compel Excess P&I Underwriters to

arbitrate their claims in the third-party defendants' London arbitration.  The Court denied Moncla Marine's request to compel Excess P&I Underwriters to arbitrate, but granted the request to stay the litigation on April 11, 2013.  Excess P&I Underwriters moved the Court to reconsider its April 11, 2013 Order and Reasons, or, alternatively, to grant their request to seek interlocutory appeal.  The Court denied Excess P&I's motion for reconsideration on June 12, 2013.  Excess P&I now moves to lift the stay for the distribution of the proceeds from the sale of the MONCLA 101.

## I.  Discussion

The Court does not agree that the stay should be lifted for the purpose of distributing the sale proceeds to Excess P&I Underwriters, because such relief would undercut the pending arbitration between Moncla Marine and third-party defendants Primary P&I, Hull, and Osprey.

Excess P&I contends that the third-party defendants have no "standing" to object to this motion because they never joined in the initial in rem action to assert a claim to the proceeds.  As the Court has previously discussed, the arbitration clause in the third-party defendants' insurance contract mandates arbitration for "any dispute arising under or in connection with this insurance."  To force the third-party defendants to stake a claim to the proceeds in this Court would be in direct contravention of

their arbitration clause--the proper venue is arbitration for the determination of whether the Primary P&I or Hull Underwriters are entitled to a salvage credit under the terms of their insurance contract.  See N. St., LLC v. Clipper Constr., LLC, No. 08-4604, 2010 WL 3523025, at *2 (E.D. La. Sept. 2, 2010) ("A party waives its right to arbitrate by actively participating in a lawsuit or otherwise taking action inconsistent with arbitral rights." (citing Miller Brewing Co. v. Forth Worth Distrib. Co., 781 F.2d 494, 496 (5th Cir. 1986)).

In response, Excess P&I submits that the Court should adjudicate the "narrow" legal question as to the priorities of the parties' claims to the sale proceeds.  Excess P&I contends:

> If Excess P&I Underwriters' claim takes precedence over London Underwriters', the conditional settlement between Excess P&I and Moncla takes effect and as to Excess P&I, this claim is resolved.  Excess P&I Underwriters will be entitled to the res.  If Primary P&I or Hull's claims take precedence over Excess P&I's, then Excess P&I will have no choice but to wait for arbitration.

Further, Excess P&I asserts that ranking the claims will not prejudice the arbitration, because arbitration cannot adjudicate the res located in the Eastern District of Louisiana.  Any determination by this Court as to the priority of the claims would require interpretation of the insurance contracts, which would frustrate the ongoing arbitration. See Waste Management v. Residuos Industriales Multiquim, S.A., 372 F.3d 339, 343 (5th Cir. 2004) ("The question is not ultimately one of weighing the

potential harm to the interests of the nonsignatory, but of determining whether proceeding with litigation will destroy the signatories' right to a meaningful arbitration."). Excess P&I's reference to the Court's discussion of the third <u>Waste Management</u> factor in its April 11, 2013 Order and Reasons overlooks the other factors and considerations the Court analyzed in issuing the stay.

Accordingly, IT IS HEREBY ORDERED that Excess P&I Underwriters' motion to lift the stay is DENIED.  IT IS FURTHER ORDERED that Excess P&I Underwriters' motion to distribute the funds is DENIED AS MOOT.

New Orleans, Louisiana, August 21, 2013

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE